IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TOMMY RAINEY,

                Plaintiff,

      v.

METROPOLITAN WATER RECLAMATION
DISTRICT OF GREATER CHICAGO,

                Defendant.

Case No. 11 C 2594

Hon. Harry D. Leinenweber

MEMORANDUM OPINION AND ORDER

The Plaintiff, Tommy Rainey ("Rainey"), an Africa-American, has filed employment claims against his employer, the Metropolitan Water Reclamation District of Greater Chicago (the "MWRDGC" or "District"), pursuant to Title VII and 42 U.S.C. §§ 1981 and 1983 alleging race discrimination, and including hostile environment, and workplace retaliation.

## I.  BACKGROUND

The District is a unit of local government created by Illinois statute for the primary purpose of collecting and treating sewage and industrial wastes and for protecting waterways in most of Cook County, Illinois. Rainey has been employed by the District from 1991 to the present. During relevant time periods he has been, and still is, employed as an Engineering Technician 5. On January 6, 2010, Rainey filed a

Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race-based discrimination in that he had been "subjected to discipline and unequal terms and conditions of employment including but not limited to denied overtime. . . ." He received a "Right to Sue" letter from the EEOC on January 21, 2011. On March 13, 2012, he filed a second Charge of Discrimination with the EEOC, this time alleging that he has "been subjected to different terms and conditions of employment, including but not limited to, being denied overtime opportunities." He further stated that he believes that this discrimination was a result of his race and because he had previously filed an EEOC charge. Thus, this charge included retaliation. He filed the original Complaint in this lawsuit on April 18, 2011, which was subsequently amended on May 15, 2012.

During discovery Rainey was asked to identify his various claims. In response he set forth in bullet point fashion seven different types of alleged race discrimination he believes he was subjected to in this case:

1. Imposition of unfair disciplinary action, with 3 separate bullet points;

2. Created a hostile work environment with 13 bullet points;

3. Denied overtime pay, supervisory pay & shift differential pay with 8 bullet points;

4.  Removal from the position of site manager to
    work under the direction of another site
    manager who was harsh and unfair, with one
    bullet point;

5.  Transferred to a less desirable work
    location which was further from home, one
    bullet point;

6.  Denied a FMLA request which was submitted as
    a result of a health condition that Rainey
    believed resulted from working for the
    Defendant, one bullet point; and

7.  Used illegal hidden cameras to monitor black
    employees, one bullet point. [*See* Appendix
    for a verbatim list of his claims, with
    dates.]

## II.  DISCUSSION

The District has moved for summary judgment on all of
Rainey's claims.

### A.  Section 1981 and 1983 Claims

The District contends that Rainey cannot prove a race
discrimination claim under either Section 1981 or 1983 because he
has not shown that his alleged injuries were caused by a
municipal policy or custom of the District, citing *Hewitt v.
Metropolitan Water Reclamation District of Greater Chicago*, 2002
WL 31176252 (N.D. Ill. 2002). The District points out, without
disagreement from Rainey, that it has several specific, written
policies against all forms of discrimination, unlawful
harassment, hostile work environment, and retaliation. Moreover,
each of these policies require employees who believed they were

- 3 -

discriminated against or subjected to hostile work environment or believed they were retaliated against for protected activities to contact the EEO Complaints Investigator in the District's Human Resources Department. All of these policies were communicated to all District employees, including to Rainey. The District further by affidavit alleges that it has not received any complaints from Rainey alleging retaliation or discrimination and Rainey does not claim otherwise. It further alleges that from July 2001 to the present it has taken disciplinary action against 17 District employees for violating one or more of its written policies and 21 employees for violating sex harassment policies. Finally the District points out that, when given the opportunity at his deposition to articulate any specifics as to how these policies were flawed, he was unable to do so. Nor has Rainey even suggested whom he claims to be the municipal policy makers.

Rainey in response contends that while these policies do exist, they were on occasion violated as applied to him. He therefore suggests that there might be a difference between the written policies and how the policies were applied to him.

Rainey seems to think that any violations, such as discrimination, harassment, or retaliation by his supervisor means that it was taken as a result of a municipal policy. These claims, however, are *respondeat superior* and this is not the law. Municipal liability attaches only where the decision maker

- 4 -

possesses final authority to establish municipal policy with respect to the action and *respondent superior* is inapplicable. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "It is plaintiff's burden to establish the municipality's imprimatur on any unconstitutional conduct." *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 509 (7th Cir. 1993). And "it is plaintiff's burden to establish the identity of the policy making official which is dependent upon state law." *Id.* This Rainey has clearly failed to do, as he has not identified anyone as the policy maker and by what authority the individual made the policy. Consequently, summary judgment is granted in favor of the District on Rainey's claims made pursuant to Sections 1981 and 1983.

### B.  Title VII Race Discrimination Claims

The District contends that Rainey's claims of race discrimination are either time barred, unrelated to his EEOC charges, or do not constitute actionable conduct. Exhaustion of administrative remedies and time bars apply to claims presented in Federal Court pursuant to Title VII, namely: (1) they must have been filed in writing with the EEOC (or the designated State Agency) and the EEOC has issued a Right to Sue letter, 42 U.S.C. § 2000e-5(f)(1); (2) a separate administration charge must be filed with the EEOC for each discrete act of discrimination

(*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)); (3) discriminatory acts that occurred more than 300 days preceding the date of the administrative charge was filed with the EEOC are time barred, 42 U.S.C. § 2000e-5(d); and, (4) discriminatory acts that are not "like or reasonably related to" and underlying charge of discrimination cannot be considered in a discrimination lawsuit." *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001). Since Rainey filed his original charge of discrimination with the EEOC on January 6, 2010, any alleged discriminatory act that occurred prior to March 11, 2009, is time barred. Many of the acts complained of by Rainey (Paragraph 1, bullet points 1and 2, Paragraph 2, bullet points 1-5, and Paragraph 3, bullet points 1-3) occurred in the late 1990s and unless excused by some rule, such a laches, estoppel, or equitable tolling, are time barred. Rainey contends that equitable tolling applies because he did not discover his injury until much later. However, he never suggests a date when he discovered the existence of any discriminatory acts. Moreover, Rainey answered interrogatories, under oath, in which he states that he reported each of these so-called acts of discrimination to his supervisor and to the Director of Personnel. Thus, he has completely contradicted his equitable tolling argument by judicial admissions. Consequently all of the claims that occurred prior to March 11, 2009 are time barred.

Rainey's remaining claims, according to the District, are either time barred (Paragraph 3, bullet point 4 - overtime denied in 2008; Paragraph 4, bullet point 1, and Paragraph 5, bullet point 1, concerning a 2007 or 2008 transfer), or are not included in his EEOC charges and not reasonably related to his actual charges (Paragraph 2, hostile work environment; Paragraph 6, denial of FMLA request; Paragraph 7, bullet point 1, use of hidden cameras), or do not constitute actionable conduct (Paragraph 1, bullet point 3, oral warning; Paragraph 3, bullet points 5-6, assignment to an "undesirable later work shift"; Paragraph 8, being told not to claim shift differential while simultaneously claiming overtime). The problem with these latter claims is that none of them constitute adverse employment actions, which is the *sine qua non* for a Title VII claim under either the direct or indirect methods of proof. The fact of the matter is that Rainey has never been denied a promotion, a raise, given a suspension, or been the recipient of any other adverse action. Receipt of oral warnings, "undesirable" work shifts, or failure to assign discretionary overtime work are not considered adverse employment actions. *Kersting v. Wal-Mart Stores, Inc.,* 250 F.3d 1109, 1118-1119 (7th Cir. 2001) (warnings that do not result in tangible job consequences do not constitute adverse employment actions; assignment to undesirable work area that was not accompanied by lower pay, or other pay hindrance do not

- 7 -

constitute adverse employment actions); *Drew v. Illinois Dept. Of Human Services*, 101 Fed.Appx. 637, 639 (7th Cir. 2004) (discretionary denial of overtime not actionable under Title VII). Accordingly, since Rainey was not subjected to any adverse employment action, he has no Title VII claim and the District is entitled to summary judgment on each of Rainey's Title VII claims.

### III.  CONCLUSION

For the reasons stated herein, the District's Motion for Summary Judgment is granted.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date:6/7/2013

- 8 -

# APPENDIX

**Part 2 -Answers to Interrogatories #6, 7, 8 & 9**

*Paragraph | : Bullet Point*

1. Imposed unfair disciplinary action
   - On February 24, 1999, at the Stickney Water Reclamation Plant (SWRP), Thomas Starr (Civil Engineer II) gave the plaintiff a written warning for *recommending* the transfer of a black employee who requested such. The warning was given under the pretense of a violation of the MWRD/Local 7 union agreement and Civil Services Boards Stipulation agreement, but no warning was given when the plaintiff recommended the transfer request of a white employee. The plaintiff verbally reported this to Mr. Starr's supervisor, Mohammad Ahad (Civil Engineer III) and then reported it to the Director of Personnel, F.D. O'Brien in a letter dated May 11, 1999.   *1*

   - On March 8, 1999, at SWRP, Thomas Starr issued a verbal warning alleging that the plaintiff was claiming excessive mileage for use of his personal vehicle on his February expense report. He made it clear that further disciplinary action would be taken if expenses continued to be claimed. He gave no such warning to the many white employees in the group who had similar expenses. As a result, the plaintiff withdrew his request for reimbursement of $53 for the month of February and submitted no further   *2*

   claims. From that point forward, the plaintiff had no choice but to pay for expenses out of pocket. The plaintiff verbally reported this to Mr. Starr's supervisor, Mohammad Ahad (Civil Engineer III) and then reported it to the Director of Personnel, F.D. O'Brien in a letter dated May 11, 1999.

   - On September 17, 2009, at the Harlem Avenue Solids Management Area (HASMA), Ann Ko (Civil Engineer IV) issued a written warning alleging that the plaintiff was not at his assigned area. She issued no such warning to a white employee who was in the same situation on an earlier occasion. (For the entire year of 2009 she issued no warnings to any white employees, yet she issued warnings to the only two black employees that work at HASMA). The plaintiff complained about this incident in person to Dan Collins (LASMA Solids Manager) on the same day. He also reported the matter to Denice Korcal (Human Resource Analyst) during a telephone call on October 23, 2009. He later spoke to Suzanne Boswick (EEOC Coordinator) about the same matter during a telephone call on October 26, 2009.   *3*